UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| JAMES SAMUEL LINDSAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.: 1:17-CV-301-HSM |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM OPINION**

Federal inmate James Samuel Lindsay has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Respondent has filed a response in opposition to the motion. Having considered the pleadings and the record, along with the relevant law, the Court finds that it is unnecessary to hold an evidentiary hearing[1], and Lindsay's § 2255 motion will be denied.

**I.  BACKGROUND FACTS AND PROCEDURAL HISTORY**

As revealed by the Court-authorized interception of Lindsay's telephone calls and text messages, he participated in a methamphetamine-distribution conspiracy [Doc. 88 ¶ 4 in No. 1:15-CR-52]. In August 2015, the United States filed notice, consistent with 21 U.S.C. § 851(a), of its intent to seek an enhanced sentence based on two of Lindsay's prior drug convictions [Doc. 99 in No. 1:15-CR-52]. The next month, Lindsay pleaded guilty to conspiring to distribute and possess with intent to distribute at least 5 grams of methamphetamine and at least 50 grams of a

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

methamphetamine mixture in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B) [Doc. 88 ¶ 1 in No. 1:15-CR-82]. As part of his plea agreement, Lindsay waived his right to appeal and collaterally attack his conviction or sentence, with the exception of claims of prosecutorial misconduct and ineffective assistance of counsel [*Id*. at ¶ 12].

Based on his prior Tennessee convictions for aggravated assault and two instances of promoting the manufacture of methamphetamine, Lindsay was designated a career offender [Doc. 204 ¶¶ 25, 49, 53, 56]. After a three-level reduction for responsibility, Lindsay's total offense level was 34 [*Id*. at ¶¶ 25-28]. Lindsay had 14 criminal history points, for a criminal history category of VI, which was the same category required by his career-offender classification [*Id*. at ¶¶ 59-60]. The resulting Sentencing Guideline ("Guideline(s)") range was 262 to 327 months' imprisonment [*Id*. at ¶ 96]. The Court ultimately sentenced Lindsay to 262 months' imprisonment [Doc. 254 in No. 1:15-CR-152].

Notwithstanding the appeal-waiver provision in his plea agreement, Lindsay sought an appeal. The Sixth Circuit affirmed his conviction and sentence [Doc. 297 in No. 1:15-CR-52]. On or about November 3, 2017, Lindsay filed the instant § 2255 motion [Doc. 1]. The United States was ordered to respond to Lindsay's allegations, and it complied by filing its response on December 7, 2017 [Doc. 4].

## II. LEGAL STANDARD

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire

proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

**III.     DISCUSSION**

In his petition, Lindsay contends that he was incorrectly classified as a career offender under the United States Sentencing Guidelines ("Guideline(s)"), and that counsel rendered ineffective assistance in failing to establish this fact. In *Strickland v. Washington*, the Supreme Court set forth a two-pronged test for determining whether a convicted defendant has received the ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* holds that a petitioner alleging the ineffective assistance of counsel must establish (1) that counsel's performance was deficient, such that counsel did not render reasonably effective assistance as measured by prevailing professional norms; and (2) that he was prejudiced by the deficiency, i.e., that there exists a reasonable probability that but for counsel's alleged acts or omissions, the results of the proceedings would have been different. *See Strickland*, 466 U.S. at 687-88, 694; *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (applying *Strickland* test to § 2255 claims). The failure to satisfy either prong of *Strickland* requires dismissal of the claim and relieves the reviewing court of a duty to consider the other prong. *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009); *see also Strickland*, 466 U.S. at 697.

Under the Guidelines, "a defendant is a career offender if (1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense [as defined under § 4B1.2]; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." Guideline § 4B1.1(a).

To determine whether a prior conviction qualifies under § 4B1.2, courts ordinarily apply a categorical approach to simple, straightforward statutes, which requires the reviewing court to

compare the elements of the statute of conviction with the "generic elements" of the offense. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Descamps v. United States*, 570 U.S. 254, 257 (2013). If the elements of the statute of conviction are broader than those comprising the generic offense, then the conviction cannot qualify as a predicate offense, regardless of the particular facts of the case. *See, e.g., Mathis*, 136 S. Ct. at 2248-49.

However, where the statute of conviction is "divisible," in that it lists elements in the alternative to define several different variants of the crime, courts may employ a "modified categorical approach" in order to evaluate which of the alternative elements constituted the offense of conviction. *See, e.g., Mathis*, 136 S. Ct. at 2249; *United States v. House*, 872 F.3d 748, 753 (6th Cir. 2017). Applying the modified categorical approach requires the reviewing court to decide whether any of the alternatives match the federal definition, and, if so, consult a limited set of documents (referred to as *Shepard* documents) to determine the elements of the crime of conviction. *See id.; see also Shepard v. United States*, 125 S. Ct. 1254 (2005). In conducting its inquiry, the Court's concern is not "whether the elements of the [state statute] contain the same words as the Guidelines' definition" but rather, "it is 'whether the elements of [the statute] are of the *type* that would justify its inclusion within the definition[.]" *United States v. Douglas*, 563 F. App'x 371, 377 (6th Cir. 2014) (emphasis in original) (citation omitted).

A.  **Aggravated assault**

Lindsay first argues that no *Shepard*-approved documents were presented at sentencing to prove the precise nature of his aggravated assault conviction. However, in the absence of any indication that such documents would reveal that the characterization of the offense was in some way inaccurate, Lindsay cannot establish that counsel was constitutionally ineffective for not requesting or obtaining *Shepard*-approved documents. *See, e.g., United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (finding defendant who challenges factual allegations in a Presentence

4

Investigation Report has the burden of producing "some evidence that calls the reliability or correctness of the alleged facts into question") (citation omitted).

Lindsay otherwise argues that his prior Tennessee conviction for aggravated assault was not a crime of violence, alleging that he may have been "guilty of only reckless conduct," and that Tennessee's definition of assault, incorporated by reference into the aggravated assault statute, includes "mere touching" that does not "cause injury or attempt to cause injury."

At the time of Lindsay's conviction, Tennessee law defined aggravated assault as one who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101[2] and:
    (A) Causes serious bodily injury to another; or
    (B) Uses or displays a deadly weapon; or

(2) Recklessly commits an assault as defined in § 39-13-101(a)(1), and:
    (A) Causes serious bodily injury to another; or
    (B) Uses or displays a deadly weapon.

Tenn. Code Ann. § 39-13-102(a). A violation of subdivision (a)(1) is a Class C felony, while a violation of (a)(2) is a Class D felony. *See* Tenn. Code Ann. § 39-13-102(d)(1).

Aggravated assault is listed in the Guidelines as a crime of violence. *See* Guideline § 4B1.2(a)(2). Tennessee's aggravated assault statute is divisible, because it lists several different variants of the offense. *See, e.g., United States v. Cooper*, 739 F.3d 873, 879 (6th Cir. 2014) (recognizing that "§ 39-13-102 can be offended in a number of ways"). In this case, the *Shepard* documents demonstrate that Lindsay's aggravated assault conviction involved a violation of Tenn. Code Ann. § 39-13-102(a)(1)(A), as he was initially charged with attempted first-degree murder for "intentionally and with premeditation attempt[ing] to kill Kevin Tacco" [Doc. 4., p. 15]. He

---

[2] Tennessee defined assault as "(1) [i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) [i]ntentionally or knowingly caus[ing] another to reasonably fear bodily injury; or (3) [i]ntentionally or knowingly caus[ing] physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a).

5

later pleaded guilty to, and was convicted of, the lesser-included offense of aggravated assault [*Id.* at p. 16]. Under Tennessee law, Lindsay could only have been convicted of a variant of aggravated assault that was a lesser-included offense of the charged offense. *See State v. Rush*, 50 S.W. 3d 424, 427 (Tenn. 2001) ("[T]he accused may be convicted only of a crime which is raised by the indictment or which is a lesser-included offense thereof."). Killing necessarily includes the causation of serious bodily injury, and therefore, the record supports that Lindsay was convicted of that variant. Additionally, because Lindsay was convicted of a Class C felony – the knowing/intentional variant of the offense, he was convicted of a violation of Tenn. Code Ann. § 39-13-102(a)(1)(A), which is a crime of violence [Doc. 4 p. 16]. *See United States v. Cooper*, 739 F.3d 873, 881-82 (6th Cir. 2014) (holding that the knowing/intentional variant of Tennessee aggravated assault satisfies the generic definition and thus qualifies as a crime of violence under the enumerated-offense clause of the Guidelines). Accordingly, Lindsay's aggravated assault conviction qualifies as a crime of violence under the Guidelines, and the conviction qualifies as a career-offender predicate.

### B. Controlled substance offenses

Lindsay next claims that his two convictions for promoting the manufacture of methamphetamine are not qualifying "controlled substance offenses" under the career-offender portion of the Guidelines. The Guidelines define a controlled substance offense as any offense "punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance. . . or the possession of a controlled substance. . . with intent to manufacture, import, export, distribute, or dispense." Guideline § 4B1.2(b). The application notes for that section clarify that the definition of "controlled substance offense" also includes unlawful possession of a listed chemical, or

equipment, with intent to manufacture a controlled substance. Guideline § 4B1.2, cmt. n.1 (noting that such conduct is criminalized under federal law by 21 U.S.C. §§ 841(c)(1) and 843(a)(6)). Similarly, "maintaining any place for the purpose of facilitating a drug offense," criminalized by 21 U.S.C. § 856, is a "controlled substance offense" under certain circumstances. *See id.*

The Tennessee statute criminalizing the promotion of methamphetamine manufacture provides, in relevant part:

> (a) It is an offense for a person to promote methamphetamine manufacture. A person promotes methamphetamine manufacture who:
>
> (1) Sells, purchases, acquires, or delivers any chemical, drug, ingredient, or apparatus that can be used to produce methamphetamine, knowing that it will be used to produce methamphetamine, or with reckless disregard of its intended use;
>
> (2) Purchases or possesses more than nine (9) grams of an immediate methamphetamine precursor with the intent to manufacture methamphetamine or deliver the precursor to another person whom they know intends to manufacture methamphetamine, or with reckless disregard of the person's intent; or
>
> (3) Permits a person to use any structure or real property that the defendant owns or has control of, knowing that the person intends to use the structure to manufacture methamphetamine, or with reckless disregard of the person's intent.

Tenn. Code Ann. § 39-17-433. The statute criminalizes separate offenses and is thus divisible, as it "sets out one or more elements of the offense in the alternative[.]" *Descamps*, 570 U.S. at 257. The subsections of the statute contain both knowing and reckless variants, while the crimes enumerated in § 4B1.2(b) and its commentary appear to require knowledge. Accordingly, if Lindsay's convictions for promotion of methamphetamine manufacture stem from reckless disregard of the intended illicit use for the chemicals or materials possessed, such convictions would likely not be a "controlled substance offense" under the Guidelines. A knowing violation under the same statute, however, would be a qualifying offense.

In this case, a review of the *Shepard* documents reveals that Lindsay was charged with acting "knowingly" [Doc. 4 p. 18, 21, 23, 24]. As a result, Lindsay's drug-related convictions fall within § 4B1.2's definition of a controlled substance offense, and counsel had no legitimate basis to object to their use as career-offender predicates.[3]

## IV. CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Lindsay must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was

---

[3] The United States maintains that both of Lindsay's controlled substance offenses were charged under the same statute. Lindsay did not file a reply in this action, so the Court assumes that he concurs with that assessment. However, *Shepard* documents in this case indicate that one of Lindsay's career offender predicate offenses was charged under Tenn. Code Ann. § 39-17-435, which makes it an offense "for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine" [Doc. 4 p. 23-24]. The Court finds that such a knowing initiation constitutes attempt to manufacture a controlled substance that fits with § 4B1.2's definition of a controlled substance offense. *See* § 4B1.2, cmt. n.1 (clarifying that the term "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses"); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) (finding criminal attempt requires defendant to intend to commit crime and take substantial step towards committing it).

8

correct in its procedural ruling." *Id*. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

**V.    CONCLUSION**

For the reasons stated herein, Lindsay has failed to establish any basis upon which § 2255 relief could be granted, and his motion will be **DENIED**. A COA from the denial of his § 2255 motion will be **DENIED**.

**An appropriate Order will enter.**

    */s/ Harry S. Mattice, Jr.*
    HARRY S. MATTICE, JR.
    UNITED STATES DISTRICT JUDGE